Filed 11/30/21  P. v. Chaidez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT CHRISTIAN CHAIDEZ,<br><br>    Defendant and Appellant. | D078168<br><br><br>(Super. Ct. No. SCD181666) |

APPEAL from an order of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Reversed and remanded.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Alana Cohen Butler, and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Robert Chaidez petitioned the trial court to recall his sentence pursuant to the Three Strikes Reform Act of 2012 (TSRA) (Prop. 36, as approved by voters, Gen. Elec. (Nov. 6, 2012)).  The trial court denied the

petition as untimely and found that Chaidez did not show good cause to excuse the delay. Chaidez appeals, contending he showed good cause for the delay by establishing that he was housed in the prison's security housing unit (SHU) when the TSRA was enacted and remained housed there with only limited access to legal materials and no actual knowledge of Proposition 36 until 2016, when he filed his petition. We conclude the trial court erred when it denied Chaidez's petition as untimely when Chaidez's undisputed testimony established that he promptly petitioned for relief as soon as he learned of Proposition 36 and—rather than making an adverse finding regarding Chaidez's credibility—the trial court observed that Chaidez's version of events had remained consistent since 2016. We therefore reverse the trial court's order denying Chaidez's petition as untimely and remand for further proceedings on his petition.

FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Chaidez was convicted of two counts of first degree residential burglary (Pen. Code, §§ 459 and 460),[1] one count of receiving stolen property (*id.*, § 496), and one count of vehicle theft (Veh. Code, § 10851). Chaidez was sentenced to an indeterminate term of 60 years to life in prison. The sentence calculation included 25 years to life for each of the two counts of burglary; 25 years to life for receiving stolen property (stayed under Pen.

---

[1]     Unless otherwise indicated, statutory citations are to the Penal Code.

2

Code, § 654); 25 years to life for vehicle theft (imposed concurrently); and five years for each of the serious felony prior convictions.[2]

In 2016, Chaidez filed a petition to recall the sentence under section 1170.126, which the superior court denied as untimely. This court affirmed the denial in *People v. Chaidez* (Oct. 23, 2017, D070609) [nonpub. opn.].[3]

In 2018, Chaidez filed additional petitions in the trial court seeking to explain the reasons for his delay. Without addressing the issue of delay, the trial court denied those petitions, concluding that the presence of the two first degree burglary counts rendered Chaidez ineligible for resentencing on the two nonserious felony convictions. In *People v. Chaidez* (July 19, 2019, D074872) [nonpub. opn.], we reversed the trial court's order and remanded the case to the trial court to reconsider the nonserious felony life term sentences, as well as the remaining issues of undue delay and dangerousness. (See *People v. Johnson* (2015) 61 Cal.4th 674, 682 (*Johnson*) [in ruling on a Proposition 36 petition for resentencing, the trial court must engage in a count-by-count analysis and may resentence the nonserious felony convictions even though the sentences on the serious or violent felony convictions remain].)

---

[2]     The facts of the underlying offense, which are not relevant to the issue raised on appeal, are set forth in Chaidez's prior appeal, *People v. Chaidez* (Sept. 10, 2008, D049656) [nonpub. opn.]. We take judicial notice of this opinion, as well as Chaidez's other prior appeals discussed *post*. (Evid. Code, §§ 452, subd. (a), 459, subd. (a).)

[3]     In this prior appeal, Chaidez conceded the trial court did not abuse its discretion in denying his initial Proposition 36 petition because the petition did not set forth any reasons for the delay in filing.

On remand, the parties filed additional briefing. Chaidez contended that he met the criteria for resentencing under Proposition 36, that he is no longer a current, unreasonable threat to public safety, and that he had good cause for the delay in filing his original petition in 2016. On the latter issue of delay, he contended he was housed in the SHU "on and off throughout the years between 2012 and 2016," and did not learn of his potential eligibility for relief until he read about Proposition 36 in a magazine in 2016. The People argued that Chaidez's petition was untimely and there was no good cause for the delay, and his long history of criminality and incarceration established that he still poses a risk of danger to public safety.

The parties appeared for hearings during September and October 2020. Chaidez testified that he was continuously housed in the SHU at various institutions beginning in 2006, when he was first sent to the Department of Corrections, until 2016, when he was released to the general population. He claimed he could not make phone calls in the SHU. He had access to mail but did not get magazines in the mail. Some inmates shared magazines, and he read magazines that were left on a table. Chaidez had access to the law library while housed in the SHU, but the law library in the SHU was a very small room with no books and some forms. Inmates had to fill out a form to request a book and were not permitted to talk in the law library room.

Chaidez claimed he did not talk to the inmates in the SHU, but he also testified that, when he was housed in the SHU at Pelican Bay, he helped his "next-door neighbor" Todd Ashker with litigation that ultimately resulted in a settlement releasing inmates from the SHU into the general prison

4

population.[4] Then, between 2011 until 2014 when he was housed at Corcoran, he participated in hunger strikes that were related to the *Ashker* lawsuit. Chaidez explained that plans for the hunger strike spread by "word of mouth" and further explained that news, and especially legal news, typically spread through the SHU in the same manner.

Chaidez acknowledged that he filed a petition for relief under Proposition 47 in 2014; he testified that he "heard about Prop 47" during November 2014, when he was briefly housed in Kings County "court jail."

Chaidez testified that, in 2016, while being escorted by prison guards to a medical appointment, he found a discarded magazine with an article that discussed resentencing in a mixed felony case. He stated that he read that the "California Supreme Court just ruled that mixed felonies[,] they have to be sent back for Prop 36; that is why I wrote [the petition] because I read it right there." He claimed that this was the first time he heard about Proposition 36, and, within days of stumbling across the article that discussed mixed-felony resentencing, he filed his Proposition 36 petition.

In November 2020, the trial court denied Chaidez's petition as untimely. The trial court noted that there were "volumes of documents" in Chaidez's case, including an "informal request[] [for disclosure]" that Chaidez filed in January 2009, when housed in the SHU, and a petition Chaidez filed in December 2014 to recall his sentence under Proposition 47 (§ 1170.18,

---

4    *Ashker v. Governor of the State of California* (N.D.Cal., No. 4:09-CV-05796), filed in 2009, resulted in a settlement agreement pursuant to which the California Department of Corrections and Rehabilitation agreed, among other things, that it would not place inmates in the SHU solely on the basis of their gang validation status. We take judicial notice of the settlement agreement filed in that case on September 1, 2015, and approved by the court on January 26, 2016. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

subd. (a)).  In addition, beginning in 2016, Chaidez filed a series of petitions for relief, beginning with his initial Proposition 36 petition, which was filed on April 1, 2016.

The trial court observed that Chaidez's initial Proposition 36 petition was not filed until April 2016, more than one year and several months after the expiration of the two-year window to apply for relief.  (§ 1170.126, subd. (b); Prop. 36, § 6, eff. Nov. 7, 2012.)  The trial court acknowledged that Chaidez "is adamant that he had no knowledge of Proposition 36 until February 2016" and that he only learned about it "by happenstance" when he picked up a magazine from a trash pile.  The trial court emphasized that Chaidez's explanation regarding how he learned of Proposition 36 had remained consistent since 2016.

The trial court observed that Chaidez's position was that, because he was in the SHU without "normal access to reading materials and [the] law library[,] he had no way of knowing" about Proposition 36; however, the trial court found that, "[e]ven though [Chaidez] attempts to portray himself as cut off from all legal resources, in his testimony and in his many filings including one from 2009 while he was in 'SHU,' he did have access to legal materials albeit more limited than if he had been in general population in that he needed to know what he was looking for when making requests for law library material."  The court noted that Chaidez "painted a picture of himself as being isolated and cut off from others and without general reading materials," but the court found that during the period after Proposition 36 was passed and the filing of his initial petition, Chaidez was "actively taking part in hunger strikes and other activities to improve the conditions for [inmates housed in the SHU]," and "[t]hose efforts were successful."

6

The trial court considered the length of the delay and the "nature and strength of the justification for the delay." The court pondered whether a defendant housed in the SHU presumptively has good cause for delay, but reasoned that, here, there was evidence that Chaidez repeatedly had and used law library access (albeit access more restricted than that available to the general prison population), while there was no evidence he attempted to reach out to any defense resources to learn what opportunities for relief were available under Proposition 36.[5] Based on this evidence, the trial court found that Chaidez "had potential resources and his failure to either learn of [Proposition] 36 or perhaps to decide not [to] pursue [Proposition] 36 because it would not apply to him[] puts him in the category of other inmates who don't file petitions within the time periods allowed and are consequently denied. . . . [T]o find otherwise would mean that there is no time limit for filing a petition . . . for those who are housed in the 'SHU,' unless . . . they are notified of the changes in the law through some . . . documented official source." The trial court concluded that good cause did not exist to justify the delay of over a year past the expiration of the deadline to file a resentencing petition and denied the petition as untimely.[6]

DISCUSSION

Prior to its amendment in 2012, "the Three Strikes law required that a defendant who had two or more prior convictions of violent or serious felonies

---

[5] The trial court observed that the record indicated that Chaidez had received " ' "legal mail" on a medical appeal' " which enclosed a pamphlet regarding potential relief under Proposition 47. However, there was no reference to any communications with Chaidez regarding Proposition 36.

[6] Based on the finding that the petition was not timely filed, the trial court declined to rule on the issue of Chaidez's current dangerousness.

receive a third strike sentence of a minimum of 25 years to life for any current felony conviction, even if the current offense was neither serious nor violent." (*Johnson, supra*, 61 Cal.4th at p. 680.) "In 2012, the California electorate approved Proposition 36 and enacted the TSRA, which included the addition of section 1170.126 to the Penal Code." (*People v. Drew* (2017) 16 Cal.App.5th 253, 256 (*Drew*).) The TSRA's effective date was November 7, 2012. (*Ibid.*)

"The [TSRA] amended the Three Strikes law with respect to defendants whose current conviction is for a felony that is neither serious nor violent. In that circumstance, unless an exception applies, the defendant is to receive a second strike sentence of twice the term otherwise provided for the current felony, pursuant to the provisions that apply when a defendant has one prior conviction for a serious or violent felony." (*Johnson, supra*, 61 Cal.4th at p. 681.) "In addition to reducing the sentence to be imposed for some third strike felonies that are neither violent nor serious, the Act provides a procedure by which some prisoners already serving third strike sentences may seek resentencing in accordance with the new sentencing rules." (*Id.* at p. 682.) Under those rules, an inmate may file "a petition for a recall of sentence" within two years of Proposition 36's effective date (November 2012), "or at a later date upon a showing of good cause." (§ 1170.126, subd. (b); *Drew, supra*, 16 Cal.App.5th at p. 256.)

Under the TSRA, trial courts have broad discretion to determine whether good cause exists for an inmate's delay in filing. (*Drew, supra*, 16 Cal.App.5th at p. 257.) "In circumstances where such discretion exists, our review of the trial court's 'good cause' determination employs the familiar 'abuse of discretion' standard." (*Id.* at p. 257.) This standard " 'involves abundant deference to the trial court's rulings.' " (*People v. Williams* (2018)

8

19 Cal.App.5th 1057, 1062 [reviewing denial of section 1170.126 petition for abuse of discretion].) However, "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [reviewing denial of defendant's *Romero* motion to strike (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497) for abuse of discretion].)

"The 'good cause' exception suggests that not every delay in filing a recall petition is excusable." (*People v. Valencia* (2021) 64 Cal.App.5th 641, 648.) In *Drew*, this court outlined relevant factors for determining what constitutes good cause for delay. We concluded the nature and strength of the justification for the delay and the duration of the delay are two factors which "are relevant analytical tools in determining 'good cause' under section 1170.126 . . . ." (*Drew*, at p. 258.) In addition, the trial court "must consider all of the relevant circumstances of the particular case, 'applying principles of common sense to the totality of circumstances.' " (*Id.* at p. 257.)

Chaidez argues that he demonstrated good cause to excuse the delay in filing his initial Proposition 36 petition in April 2016. The Attorney General disagrees, contending the trial court's determination that Chaidez did not establish good cause was within its broad discretion (see *Drew, supra*, 16 Cal.App.5th at p. 257).

Here, the trial court acknowledged Chaidez's litigious history and acknowledged that Chaidez's access to legal materials was "more limited than if he had been in general population in that he needed to know what he was looking for when making requests for law library material." The trial court further acknowledged that Chaidez "is adamant that he had no knowledge of Proposition 36 until February 2016." The court pondered whether a defendant housed in the SHU presumptively has good cause for

9

delay, but concluded that Chaidez "had potential resources and his failure to either learn of [Proposition] 36 *or perhaps to decide not [to] pursue [Proposition] 36 because it would not apply to him*[] puts him in the category of other inmates who don't file petitions within the time periods allowed and are consequently denied." (Italics added.)

We asked the parties to submit supplemental briefing addressing two issues: (1) whether the trial court made any findings regarding Chaidez's credibility or lack of credibility—in particular, with respect to his testimony that he never heard of Proposition 36 before he filed his petition for resentencing in 2016, and (2) what evidence, if any, supports the trial court's suggestion that Chaidez knew about Proposition 36, but "perhaps . . . decide[d] not [to] pursue [Proposition] 36" relief until he filed his petition for resentencing in 2016.[7]

The parties agree the trial court made no credibility finding as to Chaidez's testimony that he never heard of Proposition 36 before he filed his petition for resentencing in 2016. The Attorney General argues that, in a prior hearing, the trial court made an "unfavorable finding[] as to [Chaidez's] credibility" when it remarked, in denying Chaidez's prior motion for self-representation, that Chaidez's "perception of what happened [during proceedings] . . . is just not accurate. I know you believe it. [¶] . . . [¶] Your perception of what is going on is part of the problem." While this remark shows that the court criticized Chaidez's perception on a separate occasion, it

_____

[7]     We also asked the parties to address whether the "California Lifers Newsletter" that Chaidez referenced in his testimony was part of the record before the trial court. The parties agree the newsletter was not part of the record. They further agree that no other such newsletters were introduced into evidence to possibly demonstrate whether Chaidez knew, or should have known, of Proposition 36 before he filed his petition.

was not directed toward the credibility of Chaidez's claim that he was unaware of Proposition 36 until 2016. Indeed, the trial court observed that Chaidez's story regarding how he learned of Proposition 36—by stumbling across a discarded magazine—has remained consistent since 2016.

With respect to the trial court's suggestion that Chaidez may have known about Proposition 36 but "perhaps . . . decide[d] not [to] pursue [Proposition] 36" relief until he filed his petition for resentencing in 2016, both parties acknowledge the statement is speculative. However, the parties disagree whether evidence in the record supports the suggestion. Chaidez contends no evidence in the record supports the suggestion and points out that "[s]uspicion is not evidence" (see *People v. Redmond* (1969) 71 Cal.2d 745, 755), while the Attorney General contends the court's suggestion that Chaidez knew of Proposition 36 but opted not to pursue relief was a reasonable inference supported by Chaidez's admissions that he had access to the law library, by his awareness of Proposition 47, and by "his clear understanding of the mechanics of legal briefing." "A reasonable inference, however, 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.'" (*People v. Morris* (1988) 46 Cal.3d 1, 21, disapproved on another ground by *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.) Here, Chaidez's willingness and ability to file petitions for relief on his own behalf, coupled with his testimony regarding how he became aware of Proposition 47 and promptly petitioned for relief thereunder suggest that, had Chaidez previously known of Proposition 36, he would have petitioned for relief at an earlier time. We thus reject the Attorney General's contention that the trial court's suggestion that Chaidez

11

may have known about Proposition 36 but "perhaps . . . decide[d] not [to] pursue [Proposition] 36" relief until he filed his petition for resentencing in 2016 was a reasonable inference drawn from the evidence.

Chaidez maintains that, in 2016, he found a discarded magazine that discussed resentencing in a mixed felony case, that this was the first time he heard about Proposition 36, and, within days of stumbling across the magazine article, he filed his Proposition 36 petition. Chaidez argues his situation is distinguishable from that of the inmate in *Drew*, *supra*, 16 Cal.App.5th 253. In *Drew*, the inmate waited more than two years after the expiration of the statutory deadline to file his petition for resentencing pursuant to Proposition 36. (*Id*. at p. 255.) Drew stated "that he 'never contacted anyone seeking relief because he did not know he was eligible' and his case was never 'caught by any of the myriad agencies who were working to identify and file the cases that were eligible for relief.'" (*Id*. at p. 255.) On appeal, he further argued that his "delay[] during a time he lacked legal representation . . . should be excused," and that he promptly filed his petition upon being alerted by counsel of the potential for resentencing. (*Id*. at p. 259.) "In effect, he contend[ed] there should be no time limits for filing a recall petition as long as no one told him he had the ability to request resentencing. Were this contention accepted, it would be tantamount to erasing the limitations period from the statute in all but the most unusual of circumstances." (*Id*. at p. 259.) The *Drew* court rejected the inmate's asserted justification, finding that "the delay was lengthy and the reason for [the inmate's] inactivity [was] unexplained except by the absence of a lawyer proactively advising him regarding his rights and remedies." (*Id*. at p. 260.)

Unlike the petitioner in *Drew*, who had not been advised that he might be *eligible* for relief under Proposition 36, Chaidez testified that he was

12

completely *unaware* of Proposition 36's existence because he was cut off from mainstream resources while in SHU housing. He admitted he had access to the SHU's law library, but, as the trial court recognized, "he needed to know what he was looking for when making requests for law library material." Chaidez contends he made "Herculean efforts to protect his rights by filing multiple motions to reduce his sentence"[8] and contends this shows that he met *Drew*'s requirement to exercise diligence to investigate potential relief for resentencing under Proposition 36. (*Drew*, *supra*, 16 Cal.App.5th at p. 260.) The trial court appeared to accept Chaidez's claims regarding limited access to resources and made no adverse findings regarding Chaidez's credibility. Moreover, as discussed, no evidence supports the trial court's suggestion that Chaidez may have known about Proposition 36 but "perhaps . . . decide[d] not [to] pursue [Proposition] 36" relief. Under these circumstances, we conclude Chaidez's situation is unlike that in *Drew*, and the trial court abused its discretion when it denied Chaidez's petition as untimely.

---

8      By contrast, *Drew* noted there was "no evidence [the defendant] did *anything* to investigate potential relief for three and one-half years . . . . He did not contact the court. He did not request assistance from the public defender's office that previously represented him. He did not inquire of anyone at the Department of Corrections and Rehabilitation." (*Drew*, *supra*, 16 Cal.App.5th at p. 260.)

DISPOSITION

The trial court's order denying Chaidez's Proposition 36 petition as untimely is reversed and the matter is remanded for further proceedings to determine whether Chaidez is entitled to relief under Proposition 36.


GUERRERO, J.

WE CONCUR:



HALLER, Acting P. J.



AARON, J.


14